* Martone, J., of the Supreme Court, voted to grant review and filed dissenting statement. *See* 182

nal charge against respondent for perjury. *See State v. Renforth,* 155 Ariz. at 386–87, 746 P.2d at 1316–17. A perjury charge is within the jurisdiction of the Attorney General or a county attorney—and this is a matter they should earnestly review.

In an appropriate case, I have no "discomfort" with the majority opinion using the word "perjury" (as is stated in n. 3 of the majority opinion). But, "perjury" is not the issue in *this* case.

## III

*In re Fresquez* is a case in which we did the right thing—we disbarred that attorney. 162 Ariz. 328, 783 P.2d 774 (1989). *In re Fioramonti,* 176 Ariz. 182, 859 P.2d 1315 (1993), is a case in which a division of this court did the wrong thing—we suspended rather than disbarred that attorney. *See Fioramonti,* 176 Ariz. at 189, 859 P.2d at 1322 (Corcoran, J., dissenting). Unfortunately, we are making the same mistake in this case that we made in *Fioramonti.* This court should disbar respondent.

897 P.2d 1345

**STATE of Arizona, Appellee,**

v.

**Douglas L. GATES, Appellant.**

**No. 1 CA–CR 91–1637.**

Court of Appeals of Arizona,
Division 1, Department E.

Sept. 27, 1994.

Review Denied May 8, 1995.*

---

Ariz. 231, 895 P.2d 522.

Grant Woods, Arizona Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, Jack Roberts, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Stephen R. Collins, Deputy Public Defender, Phoenix, for appellant.

## OPINION

NOYES, Judge.

Douglas L. Gates ("Appellant") was indicted on one count of sexual exploitation of a minor, a class two felony and dangerous crime against children in violation of Ariz. Rev.Stat.Ann. ("A.R.S.") section 13-3553(A)(1) (1989). Appellant was tried, convicted, and sentenced to prison for the mandatory minimum term of twelve calendar years. We have jurisdiction of his appeal pursuant to A.R.S. sections 12-120.21(A)(1) (1992), 13-4031 (1989), and 13-4033(A) (Supp. 1993).

The charge, which was based on three home videotapes, required proof that Appellant made a film in which minors are engaged in sexual conduct. Because no minor on these tapes is so engaged, we reverse and remand with directions to enter a judgment of acquittal.

### Facts

We view the facts in a light most favorable to sustaining the conviction. *See, e.g., State v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593,

613 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993). In late April 1991, a fourteen-year-old girl told a Glendale Police officer that she thought Appellant had videotaped her while she changed clothes in his bedroom prior to taking a swim. The officer then obtained and executed a search warrant, seizing from Appellant's apartment a diary, a video camera, and three videotapes. One tape showed the fourteen-year-old girl changing clothes. A second tape showed several clothes-changing sessions involving three other girls under the age of fifteen, as well as a scene in which Appellant walked in on one of the girls, aged ten, while she was taking a shower. The third tape was a montage of numerous photographic images of children from non-pornographic magazines, catalogs, and other visual or print media.

The physical evidence at trial consisted of the three videotapes, the page from Appellant's diary in which he admitted being attracted to young girls, and photographs taken by the officer of two of the girls who were videotaped and of Appellant's bedroom. The officer was the only witness at trial. As agreed to by the parties, the ages of the girls Appellant had videotaped were established by testimony of the officer. The officer also testified about statements Appellant made after being advised of his constitutional rights. Appellant admitted that he had produced the three tapes over a period of about six months. The subjects of the first two tapes were girls he had met at various times at his apartment complex. Except for the shower scene, Appellant was not present during the filming, nor did he control the camera. He would set the camera up on a nightstand in the bedroom, turn the camera on, then leave the room while the girls came in to change clothes before or after taking a swim, or when getting ready for bed. The girls were unaware that they were being filmed. Appellant told the officer that he later watched the tapes and fantasized about the girls while masturbating. Appellant admitted that he sexually fantasized about girls in the age range of five to fifteen years. Appellant denied physically molesting the girls, and no one claimed that he had done so.

We have viewed the three videotapes. The first two tapes show occasional views of genitals and pubic areas as the girls changed clothes, but there are relatively few such views, and there is no particular attention paid by either the stationary camera or the girls to those areas. Appellant created the shower scene by pulling the curtain aside and exposing the naked child to his camera, but she immediately pulled the curtain closed, then drew it around her and peered out, waiting for Appellant to go away.

The third tape is a montage that Appellant must have spent hours putting together by filming selected portions of numerous non-pornographic books, magazines, catalogs, television programs, and other video material, including some freeze-frames from the first two tapes. Typical footage on the third tape shows young girls and infants in normal situations and poses at the beach, on a swing-set, at the playground, in the bathtub, in a ballet costume, and in a dance class. There are photos from department store underwear advertisements, National Geographic-type articles, and medical textbooks. Many of the children are nude and many are not. Although the children were photographed or filmed in innocent poses and activities, Appellant's camera frequently zooms in and lingers on their genital and pubic areas. Nearly all of the children are depicted in happy situations with family or friends. One exception is a photograph of a naked Vietnamese girl running down the road in terror after being napalmed. Many people have seen this photograph for it won the Pulitzer Prize in 1973. *See* SHERYLE KEEKLEY & JOHN KEEKLEY, MOMENTS, THE PULITZER PHOTOGRAPHS 88–89 (1978).

## Statute and Definitions

The child pornography offense for which Appellant was convicted, sexual exploitation of a minor, is set forth in A.R.S. section 13–3553, which makes it illegal to knowingly record, film, photograph, develop or duplicate "any visual print medium in which minors are engaged in sexual conduct." A.R.S. section 13–3551(2) defines several kinds of activity as sexual conduct within the meaning of the child pornography statutes. The only definition arguably relevant to this case is that the phrase "sexual conduct" means the "[l]ewd exhibition of the genitals, pubic or rectal areas of any person." A.R.S. § 13–3551(2)(f).[1] The question, then, is whether any of the minors in Appellant's videotapes could be found to be engaged in the lewd exhibition of her genitals, pubic or rectal area.

■ The State cites a line of federal cases originating with *United States v. Dost,* 636 F.Supp. 828 (S.D.Cal.1986), *aff'd sub nom., United States v. Wiegand,* 812 F.2d 1239 (9th Cir.), *cert. denied,* 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987), and argues that when deciding whether something constitutes a "lewd exhibition," we should focus on the intent of the defendant. *See Wiegand,* 812 F.2d at 1244. According to the State, "the legislature intended to criminalize the conduct of those who exploit children by filming and photographing them as sexual objects whose sole value to the viewer is that of sexual gratification." We disagree with this argument to the extent that it rewrites the statute into one that criminalizes aberrant thoughts without regard to whether the film or photograph produced by those thoughts depicts any minors engaged in sexual conduct. Appellant argues that the statute requires that the minors, not the defendant, be the ones who are engaged in the sexual conduct, in the lewd exhibition of their genitals, pubic or rectal areas. We agree because that is plainly what the statute says.

■ Although the term "lewd" is not defined by statute or Arizona case law, it has been held to have an ordinary meaning, one that is "easily understood by the common man." *State v. Limpus,* 128 Ariz. 371, 376, 625 P.2d 960, 965 (App.1981) (holding that, although "lewd" is not defined by statute, it sufficiently defines a reasonably ascertainable standard of improper conduct so as not to render A.R.S. section 13–3552(A)(1) void for vagueness).

We believe a person of ordinary intelligence would understand the term "lewd" to connote sexual suggestiveness. *See United States v. Nemuras,* 567 F.Supp. 87, 89 (D.Md.1983) (stating that lewd has a "generally well recognized meaning, connoting sexual suggestiveness"), *aff'd,* 740 F.2d 286 (4th Cir.1984); *see also* WEBSTER'S NEW WORLD DICTIONARY 812 (2d ed. 1984) (defining lewd as "showing, or intended to excite, lust or sexual desire, esp. in an offensive way"); BLACK'S LAW DICTIONARY 882 (6th ed. 1990) (defining the term "lascivious" as "[t]ending to excite lust; lewd; indecent; obscene; sexual impurity; tending to deprave the morals in respect to sexual relations; licentious"); *accord United States v. Knox,* 32 F.3d 733, 745–47 (3d Cir.1994) (adopting the definition of lascivious found in BLACK'S LAW DICTIONARY).

---

1. The jury was instructed:

    A person commits Sexual Exploitation of a Minor by knowingly recording, filming, photographing, developing or duplicating any visual or print medium in which minors are engaged in sexual conduct.

    "Sexual conduct" includes the lewd exhibition of the genitals, pubic or rectal areas of any minor child.

    "Visual or print medium" means:

    a. Any film, photograph, video tape [sic], negative, slide or;

    b. Any book, magazine or other form of publication or photographic reproduction containing or incorporating in any manner any film, photograph, video tape [sic], negative or slide.

    A minor is any child under the age of 15 years.

The word "lewd" "may have different meanings in varying contexts." *Limpus*, 128 Ariz. at 376, 625 P.2d at 965. For example, because of their innocence regarding sexual matters, young children are presumed incapable of expressing sexual suggestiveness on their own. *Dost*, 636 F.Supp. at 832. Accordingly, what constitutes a "lewd exhibition" of a child's genitals can be different from what constitutes a "lewd exhibition" of an adult's genitals. *Id.*; *see also United States v. Arvin*, 900 F.2d 1385, 1391 (9th Cir.1990) ("[T]he type of sexuality encountered in pictures of children is different from that encountered in pictures of adults."), *cert. denied*, 498 U.S. 1024, 111 S.Ct. 672, 112 L.Ed.2d 664 (1991). The knowledge or intent of the children is generally not material in child pornography cases because "lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or like-minded pedophiles." *Wiegand*, 812 F.2d at 1244. To this extent, then, the defendant's intent is relevant to the inquiry. The defendant is the one who sets up the exhibition, and the lewdness of that exhibition is measured, in part, by the defendant's intent. But defendant's intent cannot create a "lewd exhibition" out of otherwise innocent activity by children.

The laws penalizing sexual exploitation of children are designed to protect children from the harms and abuses occasioned by those children being used as subjects for child pornography. By enacting these laws, our legislature expressed its judgment that "[t]he use of children as subjects in the production of pornographic materials is very harmful to both children and society as a whole." 1978 Ariz.Sess. Laws Chap. 200, § 2; *accord New York v. Ferber*, 458 U.S. 747, 758, 102 S.Ct. 3348, 3355, 73 L.Ed.2d 1113 (1982) (discussing the legislative purpose underlying New York's child exploitation laws).

The child pornography statutes are written broadly enough to outlaw all child pornography, but they have to be interpreted sensibly enough so as not to apply to medical text-books, National Geographic magazines, or baby-in-the-bath family photographs. *See Ferber*, 458 U.S. at 773–74, 102 S.Ct. at 3363 ("[w]hatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which [the child pornography statute's] sanctions, assertedly, may not be applied."); *see also Knox*, 32 F.3d at 752 (citing *Ferber* for the proposition that "[a]lthough some protected expression, ranging from medical textbooks to National Geographic photographs, could possibly be reached by the statute, this tiny fraction of materials within the statute's coverage could be protected by case-by-case analysis.").

Sexual exploitation of children is an offense deemed so dangerous by the legislature, so harmful to the lives of children, that it carries a mandatory minimum penalty of twelve calendar years in prison. *See* A.R.S. § 13–604.01(B) and (D) (Supp.1993). In Arizona, the mandatory minimum penalty for sexual exploitation of children is greater than that for second degree murder, ten calendar years in prison. *See* A.R.S. § 13–710(A) (Supp.1993). A penal statute of this severity cannot be interpreted to encompass every kind of harm to children. As the Supreme Court explained:

> Here the nature of the harm to be combated requires that the state offense be limited to works that *visually* depict sexual conduct by children below a specified age. The category of "sexual conduct" proscribed must also be suitably limited and described.

*Ferber*, 458 U.S. at 764, 102 S.Ct. at 3358 (emphasis in original).

### Factors to be Considered

The trial court gave this jury instruction on "lewd exhibition":

> The following factors may be considered by you in deciding whether the video presentations received in evidence in this case involve the lewd exhibition of the genitals, pubic or rectal areas of any child:
>
> 1) whether the focal point of the pictures is on the child's genitals, pubic or rectal area;

2) whether the setting is sexually suggestive;

3) whether the child is depicted in an unnatural pose, considering the age of the child;

4) whether the child was clothed or nude;

5) whether the pictures suggest a willingness to engage in sexual activity;

6) whether the pictures are intended or designed to elicit a sexual response from the viewer;

7) whether the picture portrays the child as a sexual object.

A visual depiction need not involve all of these factors in order to be a lewd exhibition, but they are factors which you may consider. The weight or lack of weight which you may give to any one of these factors is for you to decide. You may not determine the pictures to be lewd merely because you may not like them or because you find them to be in bad taste.

This instruction contains the factors articulated by a federal trial judge in explaining his verdict in *Dost,* as modified and quoted with approval as a federal jury instruction in *Arvin.* Appellant objected to the giving of this instruction, but the specific grounds presently argued first appeared in the post-verdict phase of the trial. Appellant argues that the instruction does not define "lewd"; it just tells the jury on what evidence it should concentrate. Appellant argues that this kind of instruction is prohibited by Article 6, Section 27 of the Arizona Constitution, which provides: "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."

■ Because we reverse on the insufficiency of the evidence to sustain the conviction, we do not decide whether the *Dost*-factors instruction was an unconstitutional comment on the evidence. But we do observe that a proper "factors" instruction is a challenge to draft for use in state court; it must be tailored to have relevance to the

evidence in the particular case, but it cannot be so tailored that it becomes a comment on that evidence. *See State v. Valencia,* 118 Ariz. 136, 138, 575 P.2d 335, 337 (App.1977) (finding no error in trial court rejecting a federal court model instruction listing various "factors" the jury should take into consideration in eyewitness identification). Because federal court judges may comment on the evidence, whereas Arizona state court judges are constitutionally prohibited from doing so, "great care should be exercised before giving an instruction approved by a federal court." *Id.*

Whether the *Dost* factors assisted or misled the jury in this case is debatable because there are relevant factors present in this case that were not present in *Dost,* and vice versa. The *Dost* defendants posed and photographed two nude minors. One of the girls was photographed in various positions that the trial court found "border on the acrobatic in order to obtain an unusual perspective on her genitalia.... All of these poses would have to be characterized as sexual poses, not the way a child or adult ordinarily sits or reclines." *Dost,* 636 F.Supp. at 833. The other child in *Dost* was photographed in what the trial court described as an "unusual pose" that emphasized her genitalia. *Id.*

■ In Appellant's case, none of the children in the first two tapes was posed by him or anyone else, and none of the children was engaged in a lewd exhibition of anything. Except for the girl in the shower, Appellant's victims did not even know they were being observed or photographed, and the camera was stationary and was not focused on genitals or pubic areas. In the one instance in which Appellant held the camera, the girl in the shower covered up immediately upon becoming aware of Appellant's intrusion. The only "posing" done by Appellant was on the third tape, and there he did not pose any children in real life, he arrayed what normal people would regard as innocuous photographic images of children, and he filmed them with an unnatural attention to the genitals and pubic areas of the children depicted.

We are unaware of any case in which a defendant has been convicted of sexual exploitation of a minor by filming minors innocently changing their clothes in private or by using a zoom lens on innocuous photographs of minors. In the cases with which we are familiar, the child pornography statutes have been used against defendants who exploited children by photographing them in such a way as to show the children engaged in a lewd exhibition of their genitals or pubic areas. *See, e.g., Knox,* 32 F.3d at 747 (concluding that minor subjects of videotapes were engaged in a "lascivious exhibition of the genitals or pubic area" for purposes of 18 U.S.C. section 2256(2)(E) when they were "clad only in very tight leotards, panties, or bathing suits" and were shown "specifically extending their legs to make their genital and pubic region entirely visible to the viewer" or "dancing or gyrating in a fashion indicative of adult sexual relations"); *Arvin,* 900 F.2d at 1386–87 (affirming defendant's conviction for mailing photographs of minors engaged in sexually explicit conduct when the photographs, captioned "Lolita–Sex," "Skoleborn–School Children," and "Little Girls F-k too," showed "prepubescent girls completely nude, facing the camera with their legs apart so as to expose their genitals"); *United States v. Wolf,* 890 F.2d 241, 246 (10th Cir.1989) (applying *Wiegand* and concluding that photograph of apparently asleep or unconscious five-year-old who was nude from the waist down and positioned in such a way that her genital area was emphasized was a "lascivious exhibition");[2] *Wiegand,* 812 F.2d at 1244 (holding that posed photographs of nude fourteen-year-old girl in various supine and sitting positions and of nude ten-year-old sitting on the beach constituted a "lascivious exhibition of the genitals"); *see also State v. Lindsey,* 149 Ariz.

493, 495, 720 P.2d 94, 96 (App.1985) (upholding defendant's convictions under A.R.S. section 13–3553 when jury found that photographs of defendant's fourteen-year-old daughter in "provocative poses and states of undress" depicted sexual conduct as defined in A.R.S. section 13–3551(2)(f)), *aff'g in part,* 149 Ariz. 472, 478, 720 P.2d 73, 79 (1986); *State v. Smith,* 156 Ariz. 518, 524, 753 P.2d 1174, 1180 (App.1987) (finding that photographs of ten-year-old boy depicting him "in various stages of undress and in various ano-genital poses, some of which include[d] [defendant's] hand and fingers," clearly supported defendant's conviction under A.R.S. section 13–3553(A)(2)); *Limpus,* 128 Ariz. at 376, 625 P.2d at 965 (holding that a photograph of a fifteen-year-old boy's erect penis taken after the defendant engaged in oral sex with him constituted "lewd exhibition of the genitals" within the meaning of A.R.S. section 13–3551(2)(f)).

We recognize that these cases are fact dependent and that it is possible to do many things with video and computer technology; our holding in this case is obviously limited to what this Appellant filmed on these tapes. We conclude that what Appellant filmed on these tapes cannot be found to be sexual exploitation of a minor in violation of A.R.S. section 33–3553(A)(1). That Appellant created these tapes might prove that he is a pedophile, but more is required to prove that he is a child pornographer within the reach of A.R.S. section 13–3553(A)(1). As the Third Circuit has observed:

Child pornography is not created when the pedophile derives sexual enjoyment from an otherwise innocent photo.... When a picture does not constitute child pornography, even though it portrays nudity, it does not become child pornography because it is

---

**2.** The child in *Wolf* was asleep or unconscious, but her position was not natural. The court noted:

The positioning of the child is such that the focal point of the photograph is the child's genital area. Her sleeping garment has, by some means, been elevated above the waist and the child is completely nude from the waist down. The position and elevation of the camera is such that the genital/vaginal area is emphasized and is in fact the primary subject of the picture. One of the child's legs is propped up on a pillow and the other pulled forward in a way which is *not a natural sleeping position, with the obvious purpose of enhancing and depicting the child's genital area.* 890 F.2d at 246 (emphasis added).

placed in the hands of a pedophile, or in a forum where pedophiles might enjoy it.

*United States v. Villard*, 885 F.2d 117, 125 (3d Cir.1989) (quoting *United States v. Villard*, 700 F.Supp. 803, 812 (D.N.J.1988)).

The children filmed by Appellant on the first two tapes were not engaged in sexual conduct. The tapes show normal, nonsexual conduct for children changing clothes or taking a shower in what they think is a private setting with no one watching. The third tape frequently focuses on the genitals and pubic areas of minors, but the photographic images used as material for the third tape show children engaged in normal, nonsexual conduct that is appropriate for the age and activity being photographed.

### Conclusion

We are not called upon to decide whether Appellant violated any law; we are called upon to decide whether the evidence supports Appellant's conviction for sexual exploitation of a minor in violation of A.R.S. section 13–3553(A)(1). It does not. Although it is offensive that the children in this case were victimized as they were by Appellant, the dispositive fact in regard to the crime charged in this case is that none of the minors was filmed by Appellant while the minor was engaged in sexual conduct.

The judgment of guilt is reversed and the matter is remanded with directions to enter a judgment of acquittal.

JACOBSON, P.J., and FIDEL, J., concur.