# IN THE SUPREME COURT OF IOWA

No. 23–0600

Submitted March 20, 2024—Filed April 19, 2024

**STATE OF IOWA,**

    Appellee,

vs.

**JESSE LEE MCCOLLAUGH,**

    Appellant.

---

Appeal from the Iowa District Court for Boone County, James B. Malloy, District Associate Judge.

A defendant appeals his conviction for child exploitation. **AFFIRMED.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Martha J. Lucey, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

**OXLEY, Justice.**

The crime of child exploitation includes possessing a visual depiction of a minor engaged in a "prohibited sexual act," which is defined to include the "[n]udity of a minor for the purpose of arousing or satisfying the sexual desires of a person who may view a visual depiction of the nude minor." Iowa Code §§ 728.1(7)(*g*), .12(3) (2022). The defendant—convicted for possessing a video of a partially nude minor after using the bathroom—challenges his conviction by arguing that such nudity is insufficient to meet the statutory definition of a "prohibited sexual act." We disagree and affirm his conviction.

I.

On April 7, 2022, Jesse McCollaugh arrived home from a work trip, and his wife, Raylee McCollaugh, helped him unpack his bags. While unpacking, Raylee discovered three cell phones inside his bag. She found a substantial amount of pornography on one of the phones, which included videos of her mother and younger sister that had been secretly recorded by her husband years prior. There were two videos of Raylee's younger sister using the bathroom. The videos were filmed through an outside window and were timestamped July 8, 2017—when her sister would have been only 15 years old. The videos show Raylee's sister urinating and then wiping—revealing her genitalia in the process—clearly unaware of the fact that she was being filmed.

After she discovered the videos, Raylee immediately confronted her husband, who admitted to recording the videos of her sister when the couple was living with Raylee's mother and sister in Boone, Iowa. He also admitted that he had a sexual problem. Following her husband's admission, Raylee contacted law enforcement and turned the phone over to police on April 10, 2022, who secured a search warrant to search its contents. Law enforcement discovered the videos of Raylee's sister in the bathroom on the phone, which confirmed the information

Raylee provided. As a result of the investigation, McCollaugh was charged on November 17 with one count of sexual exploitation of a minor, in violation of Iowa Code sections 728.12(3) and 903B.2. He subsequently pleaded not guilty to the aggravated misdemeanor.

McCollaugh waived his right to a jury trial and stipulated to a bench trial on the minutes of testimony, which was held on March 1, 2023. On March 3, the district court filed its verdict finding McCollaugh guilty as charged. The sentencing hearing was held on April 11, and the district court ordered McCollaugh to serve an indeterminate prison term not to exceed two years. The sentencing order also required McCollaugh to register as a sex offender. Now, McCollaugh appeals his conviction, sentence, and judgment.

On appeal, McCollaugh challenges the sufficiency of the evidence supporting his conviction, arguing that it fails to establish that the victim had the purpose of engaging in nudity to arouse or satisfy the sexual desires of a person who may view the visual depiction, as he argues is required by Iowa Code section 728.1(7)(*g*). The State counters that McCollaugh misinterprets the statute as requiring the State to prove the *victim*'s purpose in being nude. The State points out that section 728.1(7)(*g*) does not mention the minor's purpose at all, so McCollaugh's contention that the minor's purpose is an element of sexual exploitation that must be proved is contrary to a plain reading of the statute. We conclude that McCollaugh misinterprets the plain language of section 728.1(7)(*g*) to impose an additional element that the State was not required to prove.

## II.

Both sufficiency of the evidence challenges and claims involving statutory interpretation are reviewed for correction of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012); *Doe v. State*, 943 N.W.2d 608, 609 (Iowa 2020).

A.

The language of the statutory provisions at issue furnishes the necessary starting point for our analysis. Section 728.12(3) provides in pertinent part: "It shall be unlawful to knowingly purchase or possess a visual depiction of a minor engaging in a prohibited sexual act or the simulation of a prohibited sexual act." Iowa Code § 728.12(3). Section 728.1(7) defines "prohibited sexual act" to mean several things for purposes of section 728.12(3), but this appeal only implicates the definition provided in paragraph (*g*): "Nudity of a minor for the purpose of arousing or satisfying the sexual desires of a person who may view a visual depiction of the nude minor." *Id.* § 728.1(7)(*g*). Reading the statutory provisions in tandem, McCollaugh argues that the State was required to prove that the victim engaged in nudity *for the purpose* of arousing or satisfying the sexual desires of a person who may view the visual depiction of her nudity. And because the video only depicted the victim using the bathroom, unaware of the fact she was being filmed, the State failed to show that she engaged in the nudity depicted by the video for the purpose of arousing the viewer.

"The first step in our statutory interpretation analysis is to determine whether the statute is ambiguous." *State v. Zacarias*, 958 N.W.2d 573, 581 (Iowa 2021) (quoting *State v. Ross*, 941 N.W.2d 341, 346 (Iowa 2020)). Our inquiry ends if we find no ambiguity because we do not search for the meaning of a statute "beyond the express language of a statute when that language is plain and the meaning is clear." *McGill v. Fish*, 790 N.W.2d 113, 118 (Iowa 2010). When the general assembly chooses to act as its own lexicographer, we are normally bound by its definitions, even if they do not coincide with dictionary or common law definitions. *Sherwin–Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 425 (Iowa 2010) (acknowledging the significance of the general assembly's choice to define words used within a statute).

Here, it is unnecessary for us to look beyond the statutory language to resolve this case. We agree with the State that a plain reading of the two statutory provisions reveals that the relevant "purpose" that the State must prove is identified after the word "purpose" in the definition, not before. *See* Iowa Code § 728.1(7)(*g*) ("Nudity of a minor for the purpose of arousing or satisfying the sexual desires *of a person who may view a visual depiction of the nude minor*." (emphasis added)). In other words, the State must prove the purpose of *purchasing or possessing* a visual depiction of the nude minor—not the *minor*'s purpose in being nude. The relevant purpose is illustrated by inserting the definition of "prohibited sexual act" from paragraph (*g*) into section 728.12(3), which would then read as follows: "It shall be unlawful to knowingly purchase or possess a visual depiction of a minor engaging in nudity of a minor for the purpose of arousing or satisfying the sexual desires of a person who may view a visual depiction of the nude minor." *See* Iowa Code §§ 728.1(7)(*g*), .12(3). The statute simply cannot be read to require the State to prove *why* the minor is engaging in the prohibited sexual activity.

McCollaugh attempts to circumvent the plain language by arguing that we have previously described Iowa Code section 728.12(3) as prohibiting "the purchase and possession of child pornography," *State v. Robinson*, 618 N.W.2d 306, 313 (Iowa 2000) (en banc), which, he argues, does not encompass the mere nudity depicted in the videos he possessed. As further support, McCollaugh notes that the current statute originated from a prohibition on minors viewing obscenity or obscene materials, which initially did not even address child pornography. *See id.* at 315–16 (citing 1976 Iowa Acts ch. 1245, § 2804 (codified at Iowa Code § 728.4 (1979))). With later statutory amendments, the general assembly created the crime of sexual exploitation of a minor with the stated purpose of prohibiting individuals "from photographing a child involved in

certain prohibited sexual acts." 1978 Iowa Acts ch. 1188; *see also Robinson,* 618 N.W.2d at 316 (citing 1978 Iowa Acts ch. 1188, § 1 (codified at Iowa Code § 728.12(1) (1979))). Therefore, McCollaugh contends that the nature of the nudity depicted in the videos here is not prohibited by the statute's language.

Even considering McCollaugh's historical account of the statute's evolution, we are unconvinced by his argument. The general assembly extended sexual exploitation of a minor to include the mere possession of imagery depicting a child engaged in a sexual act, and it chose to define "prohibited sexual act" to include "[n]udity of a minor for the purpose of arousing or satisfying the sexual desires of a person who may view a visual depiction of the nude minor." Iowa Code § 728.1(7)(*g*). It is our job to interpret that language as written. It is not our job to incorporate generalized notions of child pornography into our interpretation—even if we characterized a prior version of the statute as prohibiting "child pornography." *Robinson*, 618 N.W.2d at 313.

Reading section 728.1(7) in its entirety reinforces our interpretation. *See State v. Doe*, 903 N.W.2d 347, 351 (Iowa 2017) ("In interpreting a statute, we first consider the plain meaning of the relevant language, read in the context of the entire statute, to determine whether there is ambiguity."). Subsection 728.1(7) defines "prohibited sexual act" to mean "any of the following" definitions, which are contained in the following paragraphs. Iowa Code § 728.1(7). The provision includes seven paragraphs, and only three of those include the qualifying language "for the purpose of." *See id.* § 728.1(7)(*e*)–(*g*). When comparing the different types of conduct prohibited by each paragraph, the reason for this distinction becomes clear.

For example, paragraph (*b*) defines "prohibited sexual act" to include "[a]n act of bestiality involving a minor." *Id.* § 728.1(7)(*b*). This paragraph targets an entire category of conduct without regard to the purpose of any individual

because the general assembly has deemed it per se sexual. The general assembly's exclusion of qualifying language reveals its intention to ensure this paragraph applies in situations with widely varying facts. Likewise, paragraphs (*c*) and (*d*) define a prohibited sexual act to include the touching of pubes or genitals involving a minor—irrespective of the minor's role in the act—and neither paragraph contains language that references purpose. *See id.* § 728.1(7)(*c*)–(*d*). Again, paragraphs (*c*) and (*d*) define conduct that is inherently sexual in nature.

Conversely, in addition to paragraph (*g*), the phrase "for the purpose of" is also found in paragraphs (*e*) and (*f*). *See id.* § 728.1(7)(*e*)–(*f*). Both paragraphs concern "[s]adomasochistic abuse . . . *for the purpose of* arousing or satisfying the sexual desires of a person who may view a visual depiction of the abuse," whether that abuse is being inflicted upon the minor, *id.* § 728.1(7)(*e*) (emphasis added), or inflicted by the minor, *id.* § 728.1(7)(*f*) (emphasis added). Including this identical language in some paragraphs while excluding it from others, *see Chiodo v. Section 43.24 Panel*, 846 N.W.2d 845, 853 (Iowa 2014) ("If the drafters intended the two concepts to be coextensive, different words would not have been used."), reveals that the general assembly intentionally included the qualifying language "for the purpose of" in paragraphs targeting conduct that is not inherently sexual in nature, thus requiring an additional showing of purpose to meet the definition of "prohibited sexual act."

Giving the identical language addressing purpose operative effect in each of the paragraphs containing the "for the purpose of" condition further refutes McCollaugh's argument here. Requiring the State to prove the minor engaged in the identified act for the specific purpose of arousing the viewer's sexual desires would lead to absurd results when applied to paragraphs (*e*) and (*f*). For example, under McCollaugh's interpretation, visual depictions of a person inflicting

sadomasochistic abuse upon a minor would only constitute a prohibited sexual act if the state proved that the minor's purpose in engaging in the abuse was to arouse the sexual desires of a person who may view the depiction. *See* Iowa Code § 728.1(7)(*e*). This illustrates that McCollaugh's interpretation of the language "for the purpose of" as requiring proof of the *minor*'s purpose for engaging in the identified act defies logic and common sense.

Paragraph (*e*) solely targets the unilateral conduct of a person other than the minor, and the nature of that conduct—sadomasochistic abuse inflicted on the minor—renders inquiry into the minor's purpose nonsensical. *See id.* Regardless of a minor's actions or demeanor in visual depictions of such abuse, we simply cannot conclude that a conviction under paragraph (*e*) rises and falls on a determination that the minor "engaged in" sadomasochistic abuse as a victim for the purpose of arousing sexual desires of someone who later views a depiction of the abuse. And because that paragraph contains the same "for the purpose of" language that McCollaugh's argument relies on in paragraph (*g*), we cannot accept his proposed interpretation of Iowa Code section 728.1(7)(*g*). *See Farmers Co-op. Co. v. DeCoster*, 528 N.W.2d 536, 538–39 (Iowa 1995) (per curiam) (recognizing that identical language in different statutes should be given the same meaning and noting that "need for uniformity becomes more imperative where the same word or term is used in different statutory sections that are similar in purpose and content").

Our decision today is consistent with our prior caselaw. In *State v. Hunter*, we considered a constitutional challenge to Iowa Code section 728.1(7)(*g*)[1] based

---

[1]At the time of our decision in *Hunter*, the relevant Code provision was Iowa Code section 728.1(6)(*g*) (1993). That section has since been renumbered to 728.1(7)(*g*). *See* 1997 Iowa Acts ch. 125, § 2 (codified at Iowa Code § 728.1(7)(*g*) (Supp. 1997)). For purposes of clarity, we will refer to section 728.1(7)(*g*) in this opinion.

on the defendant's claim that the statute's definition of "prohibited sexual act" was unconstitutionally vague. 550 N.W.2d 460, 462–63 (Iowa 1996), *overruled in part on other grounds by Robinson*, 618 N.W.2d 306. In that case, we rejected the defendant's vagueness challenge because the qualifying phrase "for the purpose of arousing or satisfying the sexual desires of a person" sufficiently informed the general public of the distinction between prohibited conduct and protected expression. *See id.* at 465–66. Notably, we explicitly rejected the defendant's argument that section 728.1(7)(*g*) criminalized "the mere nudity of a minor." *Id.* at 466. The statute's language addressing purpose "requires an element of scienter," and the defendant's "conduct clearly fell within the statute's prohibition of photographing a nude minor *for the purpose of* arousing or satisfying the sexual desires of a person viewing the pictures." *Id.* at 466–67 (emphasis added).

McCollaugh attempts to distinguish *Hunter* by arguing that we did not squarely determine the issue presented in this case because our consideration of the defendant's vagueness claim focused solely on whether the statutory language adequately alerted him that his conduct was prohibited, a claim we rejected based on the circumstances surrounding his actions. *Id.* at 465–66. We are not convinced by McCollaugh's argument. The scienter requirement was necessary to our rejection of a vagueness challenge, and the scienter requirement we identified was "for the purpose of arousing or satisfying the sexual desires of a person who may view a depiction of the nude minor." *Id.* at 466 (quoting Iowa Code § 728.1(7)(*g*)). McCollaugh's attempt to distinguish *Hunter* goes to a vagueness challenge he did not make below or even mention on appeal until his reply brief, which was too late. *See* Iowa R. App. P. 6.903(4) ("Issues may not be asserted for the first time in the reply brief."). Even so, McCollaugh's argument about whose purpose is at issue runs head-on into our holding in *Hunter* that

the purpose phrase identifies the defendant's scienter, not the victim's purpose for being nude. *See* 550 N.W.2d at 465–66.

McCollaugh also asserts that we considered the victim's purpose in *Hunter* when we noted that she posed provocatively for the photographs. *See id.* at 462. McCollaugh mischaracterizes our discussion of the photos in that case. First, there is no indication that the victim posed herself—as opposed to the defendant posing her—for the pictures. *Id.* at 462, 466. Second, the fact that the victim was in provocative poses was not critical to our holding. To the contrary, we explicitly concluded that the "purpose" language imposed an element of scienter, making clear that the relevant purpose was that of the defendant, not of the victim. *See id.* at 466. McCollaugh's position is inconsistent with our holding in *Hunter*, and we have no intention of walking back the scienter requirement we identified there.

The out-of-state cases cited by McCollaugh reinforce our interpretation. Each case interpreted statutory language that differed in a material way from section 728.1(7)(*g*) by requiring the nudity to be lewd or lascivious. *See State v. Gates*, 897 P.2d 1345, 1348 (Ariz. Ct. App. 1994) (considering whether videotapes possessed by defendant showed minors "engaged in the lewd exhibition of [their] genitals, pubic or rectal area" as prohibited by Ariz. Rev. Stat. § 13-3551(2)(f) (1992)), *superseded by statute*, Ariz. Rev. Stat. §§ 13-3551, -3553 (1996), as recognized in *State v. Chandler*, 418 P.3d 1109 (Ariz. Ct. App. 2017); *Lockwood v. State*, 588 So. 2d 57, 58 (Fla. Dist. Ct. App. 1991) (per curiam) (determining videos of minor undressing and showering did not show presentation of sexual conduct under Fla. Stat. § 827.071(5)(1)(g) (1989) that included "actual lewd exhibition of the genitals" (quoting Fla. Stat. § 827.071(5)(1)(g))); *State v. Whited*, 506 S.W.3d 416, 430–31 (Tenn. 2016) (determining mere nudity of a minor did not fall within the definition of "lascivious exhibition" as used in Tenn.

Code § 39-17-1002(8)(G) (2014)). Moreover, the reasoning discussed in those cases directly refutes McCollaugh's argument here. *See Gates*, 897 P.2d at 1349 ("The knowledge or intent of the children is generally not material in child pornography cases . . . . [T]he defendant's intent is relevant to the inquiry. The defendant is the one who sets up the exhibition, and the lewdness of that exhibition is measured, in part, by the defendant's intent." (citation omitted)); *Whited*, 506 S.W.3d at 440–41 (distinguishing Tennessee statute from other states that have "included in their child sexual exploitation statutes explicit language making the defendant's subjective purpose of sexual gratification an element of the offense"). To the extent they inform our analysis, these cases support the State's position over McCollaugh's.

Based on the foregoing discussion, we reject McCollaugh's challenge to the sufficiency of the evidence because the statute does not require the State to prove the minor's purpose as an element of the offense. With this understanding of the statute, we conclude that there was sufficient evidence to prove McCollaugh's purpose for taking the videos was for his sexual gratification based on the videos being found among other pornography, the secret nature of the filming, and McCollaugh's admission that "he had a sexual problem" when confronted by his wife. We affirm his conviction for sexual exploitation of a minor.

### B.

The second issue raised on appeal concerns the district court's consideration of and reliance on an improper factor in its sentencing order. We review sentences imposed in criminal cases for correction of errors at law. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). "A sentencing court's decision to impose a specific sentence that falls within the statutory limits 'is cloaked with a strong presumption in its favor, and will only be overturned for an abuse of discretion or the consideration of inappropriate matters.'" *State v. Damme*, 944

N.W.2d 98, 105–06 (Iowa 2020) (quoting *Formaro*, 638 N.W.2d at 724). "We afford sentencing judges a significant amount of latitude because of the 'discretionary nature of judging and the source of respect afforded by the appellate process.' " *Id.* at 106 (quoting *Formaro*, 638 N.W.2d at 725).

To establish reversible error based on an improper sentencing factor, the defendant is required to show that the court was not just merely aware of the factor, but that it relied on the factor in determining its sentence. *State v. Ashley*, 462 N.W.2d 279, 282 (Iowa 1990). When that showing is made, "[w]e cannot speculate about the weight a sentencing court assigned to an improper consideration[,] and the defendant's sentences must be vacated and the case remanded for resentencing." *State v. Gonzalez*, 582 N.W.2d 515, 517 (Iowa 1998) (per curiam). The sentence ordered by the district court in this case was within the statutory limits, so there is a strong presumption in favor of the sentence that can only be overcome by an affirmative showing that the district court relied on improper evidence. *See Damme*, 944 N.W.2d at 105–06.

Here, McCollaugh argues that the State presented unproven facts during the sentencing hearing when it stated that "[w]e don't know how often he viewed [the videos]. It could have been every day." McCollaugh argues that this amounts to improper evidence because nothing in the record establishes whether he ever viewed the videos at all. Furthermore, he contends that the district court's statement that the sentence was "based on all of the things we've talked about here," and its failure to disavow the prosecutor's comments—when taken together—clearly establish that the court actually considered and relied on the unsupported fact in determining its sentence. In response, the State argues that McCollaugh's argument disregards important context because the district court's reference to "all of the things we've talked about here" was made directly

after explaining the many determinants behind its sentencing decision—which did not include how often McCollaugh viewed the videos.

Considering the respective positions, we conclude that McCollaugh cannot make the necessary showing from the record presented. In its sentencing order, the district court explicitly delineated the reasons for the sentence and never mentioned the comment made by the prosecutor during the sentencing hearing. Furthermore, we agree with the State that the district court's statement about considering "all of the things" does not support McCollaugh's position. In fact, reading that statement within the context in which it was made reveals that the district court did not consider the unproven fact mentioned by the prosecutor. Therefore, we conclude that the district court properly exercised its sentencing discretion.

III.

McCollaugh's conviction and sentence are affirmed.

**AFFIRMED.**