Norfolk

HAROLD W. FRANTZ

v.

COMMONWEALTH OF VIRGINIA

No. 1383-87-1

Decided January 30, 1990

COUNSEL

Anthony J. Nicolo (Darell Sayer; Sayer & Nicolo, on brief), for appellant.

Leah A. Darron, Assistant Attorney General (Richard C. Smith, Assistant Attorney General; Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

COLE, J.—Harold W. Frantz was convicted by a jury of two counts of violation of Code § 18.2-374.1(B)(1) and three counts of violation of Code § 18.2-370(6), offenses which involve the solicitation or encouragement of children under the age of eighteen to appear in sexually explicit visual material. He was sentenced to a total of twenty-five years in prison, with fifteen of those years to be served concurrently with other sentences.[1] In this appeal Frantz contends that the evidence was insufficient to prove that the photographs he took were sexually explicit visual material as

---

[1] At the same trial, Frantz was convicted of one count of aggravated sexual battery and one count of sexual battery. We have denied his petitions for appeal of those convictions.

contemplated by the statute.[2] We agree, and therefore reverse his convictions.

■ When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view all evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom. The jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it. *Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988).

The evidence at trial showed that Frantz operated a photography development business in Portsmouth called "Photo One." He often hired young boys who lived in his neighborhood to perform chores at the store.

D.A.F., 13, testified that he went to Photo One with his friend M.S. during the summer of 1983 after M.S. told him they could make some money there. The boys talked to Frantz in his office at the store, and he asked to photograph them in the nude after his employees left. D.A.F. was reluctant, but agreed after Frantz told him it was "easy."

The boys returned later that same day when Frantz was alone at Photo One. The photographs were taken in a studio in the store. D.A.F. removed his clothes and "posed" facing the camera in a standing position with his hands behind his head. After Frantz had photographed D.A.F., he gave him twenty-five dollars, offered him cigarettes and suggested that they could take more photographs another time. D.A.F. never posed again, but helped Frantz with chores at another photo shop and visited Frantz's home on several occasions. On one of those visits, D.A.F. testified that Frantz took him into his bedroom and held him against his will, but finally let him go.

R.S., 15, testified that he went to Photo One with his friend, D.W., in July or August, 1986. Frantz asked if he could photograph R.S. nude for $10. Frantz told R.S. and D.W. to come back

---

[2] Because of our disposition of the case, we do not reach three other issues raised by Frantz. They are: (1) whether the evidence was sufficient to prove that Frantz possessed the requisite intent for the offenses; (2) whether the trial court erred in allowing evidence of crimes other than those alleged in the indictments; and (3) whether the trial court erred in refusing instructions on the lesser offense of contributing to the delinquency of a minor.

on another day, and the two returned a day or two later after business hours. R.S. testified he was "just standing there" as Frantz took nude pictures of him in the studio, and that Frantz made no effort to touch him.

D.W., 14, testified that he had been to Photo One before his 1986 visits with R.S. In the summer of 1985, he was at the store while Frantz took nude pictures of M.S. and J.D. On that day he also saw developed photographs that Frantz had taken of M.S. and J.D. on an earlier occasion. D.W. testified that M.S. and J.D. appeared nude in separate photographs, but gave no further description.

Later that summer, D.W. came to the store with J.D. and Frantz paid D.W. five dollars to be photographed with his shirt off. D.W. came back to Photo One during the summer of 1986 with R.W., and Frantz asked both of them to appear in nude photographs. When the two returned later, Frantz took frontal nude pictures of D.W., instructing him to "[d]o what you want." D.W. testified he was "[j]ust standing there" as the pictures were taken. Frantz paid him fifteen dollars.

M.S., 12, testified that Frantz had paid him ten dollars to be photographed nude more than once, but he could not remember when or how many times. On one occasion, Frantz took his own clothes off when he photographed M.S., but never attempted to touch M.S.

J.D., 16, testified that he met Frantz "sometime around '85" at Photo One and Frantz persuaded him to appear in nude photographs for money. J.D. testified on direct examination that Frantz photographed him "about ten or fifteen times;" on cross-examination, he stated it happened "about twenty" times. Each time, Frantz paid him twenty dollars.

The first time J.D. was photographed, he and M.S. posed nude together. J.D. appeared alone in the later photo sessions, including one in a wooded area outside Portsmouth. J.D. testified that while being photographed, he was "[j]ust standing there or walking around or something." On one occasion while he was photographing J.D., Frantz took off his own clothing, lay on the floor and masturbated until he ejaculated in front of the boy.

Three other boys testified that Frantz asked them to pose for nude photographs, but they refused. A.T., 14, stated that Frantz showed him pictures of a nude woman "modeling" in a bedroom and asked him several times to pose nude. He offered to pay A.T. amounts ranging from two hundred to two thousand dollars to pose. D.S., 13, testified that Frantz asked him twice to "take nude pictures for twenty dollars." J.A., 15, was offered ten thousand dollars by Frantz to pose nude.

Frantz was convicted under Code § 18.2-374.1 of soliciting J.D. and M.S. with intent to induce or force each of them to be the subjects of sexually explicit visual material.[3] He was convicted of violating Code § 18.2-370(6) by knowingly encouraging with lascivious intent R.S., D.W. and D.F. to be the subjects of sexually explicit visual material.[4] Code § 18.2-374.1(A) defines "sexually explicit visual material" for purposes of both statutes as "a picture, photograph, drawing, sculpture, motion picture film or similar visual representation which depicts sexual bestiality, a lewd exhibition of nudity, as nudity is defined in § 18.2-390, or sexual excitement, sexual conduct or sadomasochistic abuse. . . ."

No photographs taken by Frantz were offered at trial. The only evidence of their content was the testimony of the boys who posed for them. There was no testimony from the victims that

---

[3] The relevant portions of Code § 18.2-374.1 are as follows:

A. For the purposes of this article and Article 4 (§ 18.2-362 et seq.) of this chapter, the term "sexually explicit visual material" means a picture, photograph, drawing, sculpture, motion picture film or similar visual representation which depicts sexual bestiality, a lewd exhibition of nudity, as nudity is defined in § 18.2-390, or sexual excitement, sexual conduct or sadomasochistic abuse, as also defined in § 18.2-390, or a book, magazine or pamphlet which contains such a visual representation. An undeveloped photograph or similar visual material may be sexually explicit material notwithstanding that processing or other acts may be required to make its sexually explicit content apparent.

B. A person shall be guilty of a Class 5 felony who:

1. Accosts, entices or solicits a person less than eighteen years of age with intent to induce or force such person to perform in or be a subject of sexually explicit visual material.

[4] Code § 18.2-370 states in pertinent part:

Any person eighteen years of age or over, who with lascivious intent, shall knowingly and intentionally:

(6) Receive money, property, or any other remuneration for allowing, encouraging, or enticing any person under the age of eighteen years to perform in or be a subject of sexually explicit visual material as defined in § 18.2-374.1 or who knowingly encourages such person to perform in or be a subject of sexually explicit material; shall be guilty of a Class 6 felony.

they were sexually aroused or that they took part in any type of sexual conduct while being photographed by Frantz. To sustain the convictions, the photographs as described by the boys must have represented "lewd exhibition[s] of nudity" to qualify as sexually explicit visual material under the Code § 18.2-374.1(A) definition.

Code § 18.2-390(2) states:

"Nudity" means a state of undress so as to expose the human male or female genitals, pubic area or buttocks with less that a full opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered or uncovered male genitals in a discernible turgid state.

■ This court has addressed the meaning of the terms "lewd, lascivious or indecent" in previous cases:

We have defined "lascivious" to mean "a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite." "Lewd" is a synonym of "lascivious" and "indecent." Webster's Third New International Dictionary 1301 (1949).

*Foster v. Commonwealth*, 6 Va. App. 313, 329, 369 S.E.2d 688, 697-98 (1988)(quoting *Dickerson v. City of Richmond*, 2 Va. App. 473, 479, 346 S.E.2d 333, 336 (1986)).

■ In *Foster*, we concluded that a proposed photograph of a young girl's exposed nipples was not, without more, a lewd exhibition of nudity. *Foster*, 6 Va. App. at 329, 369 S.E.2d at 698. Similarly, there is nothing in the record before us to suggest that the nude photographs taken by Frantz were lewd within the meaning of the statute. There is no evidence that the boys assumed erotic or provocative poses. R.S. and D.W. testified they were "just standing there" as the photographs were taken; J.D. testified he was "just standing there or walking around or something." D.W. testified he "posed" facing the camera with his hands behind his head. Evidence that Frantz himself was sexually aroused by the

poses is irrelevant.[5] "[N]udity alone is not enough to make material legally obscene." *Freeman v. Commonwealth*, 223 Va. 301, 311, 288 S.E.2d 461, 466 (1982).

■ The Commonwealth argues that actual creation of sexually explicit visual material is not a required element of the offenses defined by Code §§ 18.2-370(6) and 18.2-374.1(B)(1). We agree. The statutes prohibit *solicitation* or *knowing encouragement* of children to appear in such material. When the photographs or other visual material are never made, the finder of fact may infer from other evidence that the defendant intended that they be sexually explicit. *See Foster*, 6 Va. App. at 327, 369 S.E.2d at 697 (defendant's intent in one incident inferred from his showing close-ups of male, female genitalia to child, his telling the child not to tell anyone what happened, his asking the child to model as his corpse, and his written account of encounter). It is necessary only that the defendant knew the nature and character of the material he intended to produce, not whether they met the legal standard of sexually explicit material. *See Freeman*, 223 Va. at 311, 288 S.E.2d at 466.

Here, however, Frantz actually made the photographs in which he solicited or encouraged D.A.F., R.S., D.W., M.S. and J.D. to appear. All five boys testified, but not one offered evidence indicating that the photographs were sexually explicit. Under these facts, Frantz's actions do not constitute violations of Code §§ 18.2-374.1(B)(1) or 18.2-370(6). Accordingly, we reverse his convictions.

*Reversed.*

Moon, J., concurred.

Baker, J., dissenting.

Because I am convinced that Frantz's intent was to produce sexually explicit material which, at least as far as he was concerned, had the desired effect, I respectfully disagree with the majority. In my view, the record contains sufficient evidence to support the convictions. Accordingly, I would affirm the judgments of the trial court.

---

[5] Such evidence would, however, be relevant to the issue of whether Frantz acted with lascivious intent as required by Code § 18.2-370(6).