Jerel PURCELL, Appellant,

v.

COMMONWEALTH OF KENTUCKY, Appellee.

No. 2001–SC–0707–DG.

Supreme Court of Kentucky.

Nov. 18, 2004.

Charles W. Rolph, Flemingsburg, David O. Welch, Law Office of David O. Welch, Ashland, for Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Perry T. Ryan, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice COOPER.

Appellant, Jerel Purcell, photographed a nude male child under the age of sixteen, and was subsequently convicted by a Fleming Circuit Court jury of promoting a sexual performance by a minor, KRS 531.320, and sentenced to ten years in prison. The Court of Appeals affirmed and we granted discretionary review. Appellant asserts (1) that subsection (b) of KRS 531.300(4) (definition of "sexual conduct by a minor") is unconstitutionally vague and overbroad; (2) that the instruction under which he was convicted violated his right to a unanimous verdict; and (3) evidence of other crimes, wrongs and acts was improperly admitted against him. We agree, and reverse Appellant's conviction and remand this case for a new trial.

At the time of the incident in question (estimated to be 1992), Appellant was forty-five years of age and the victim, A.B., was thirteen years of age. Appellant, a former sheriff of Fleming County, was an acquaintance of A.B.'s father. During the summer of 1992, Appellant and A.B.'s father began taking walks together for health reasons. A.B. accompanied them. A.B.'s father subsequently discontinued his participation but A.B. continued to walk with Appellant. A.B. testified that, during these walks, Appellant occasionally initiated conversations with him about sexual matters. On one occasion, he asked A.B. if he masturbated and, when A.B. denied such, Appellant asked him if he would like a demonstration. A.B. declined. On another occasion, Appellant told A.B. that two young women had approached him and expressed their desire to have sexual intercourse with the two of them, but wanted to exchange nude photographs before doing so. A.B. agreed to be photographed. The two then proceeded to Appellant's residence where A.B. undressed and Appellant used a Polaroid camera to take a full frontal nude photograph of A.B. A.B. then dressed, Appellant undressed, and A.B. took a full frontal nude photograph of Appellant. No physical contact occurred during the photo session, nor were the two nude at the same time. Appellant kept both photographs.

A.B. never met either of the two women who supposedly wanted to see the photographs; nor did he ever see any photographs of the women. Appellant admitted that A.B.'s description of the incident was accurate and insisted that he had met both women and that they had shown him a nude photograph of themselves. He claimed that he subsequently decided that the whole idea was a "stupid mistake" and destroyed the photograph of A.B. Although Appellant gave police the name of one of the women who had approached him, police were unable to locate anyone by that name in Fleming County. In lieu of the missing photograph of A.B., the parties stipulated to the accuracy and admission of an artist's rendition of the photograph. The rendition showed a young boy standing nude, facing straight ahead with his arms held out at his sides. Consistent with A.B.'s testimony, the artist's rendition did not portray the boy with an erection.

## I. VALIDITY OF STATUTE.

### A. *Present statutory scheme.*

■ The provision under which Appellant was convicted, KRS 531.320(1), states:

A person is guilty of promoting a sexual performance by a minor when, knowing the character and content thereof, he produces, directs or promotes any *performance* which includes *sexual conduct by a minor.*

(Emphasis added.)

KRS 531.300(7) defines "promote":

"Promote" means to prepare, publish, print, procure or manufacture, or to offer or agree to do the same.

KRS 531.300(5) defines "performance":

"Performance" means any play, motion picture, *photograph,* or dance. Performance also means any other visual representation exhibited before an audience.

(Emphasis added.) [1] Thus, if A.B.'s act of posing nude for the photograph taken by Appellant constituted "sexual conduct by a minor," Appellant was properly convicted of violating KRS 531.320(1). KRS 531.300(4) defines "sexual conduct by a minor":

"Sexual conduct by a minor" means:

(a) Acts of masturbation, homosexuality, lesbianism, bestiality, sexual intercourse, or deviant sexual intercourse, actual or simulated;

(b) *Physical contact with,* or *willful or intentional exhibition of the genitals;*

(c) Flagellation or excretion for the purpose of sexual stimulation or gratification; or

(d) *The exposure, in an obscene manner, of the unclothed or apparently unclothed human male or female genitals,* pubic area or buttocks, or the female breast, whether or not subsequently obscured by a mark placed thereon, or otherwise altered, in any resulting motion picture, *photograph* or other visual representation, exclusive of exposure portrayed in matter of a private, family nature not intended for distribution outside the family.

(Emphasis added.) Obviously subsections (4)(a) and (4)(c) have no application here. Subsection 4(d) specifically includes a "photograph" as an "exposure;" and because a photograph is also a "performance," the photograph Appellant took of A.B. could constitute promoting a sexual performance that includes sexual conduct by a minor as defined under subsection (4)(b).

KRS 531.300(3) defines "obscene":

"Obscene" means the predominate appeal of the matter taken as a whole is to a prurient interest in sexual conduct involving minors.[2]

*B. Historical context.*

KRS Chapter 531, entitled "Pornography," was originally enacted in 1974[3] as a part of the Kentucky Penal Code. Except for the "special verdict form" in KRS 531.080, its original provisions remain unchanged. KRS 531.010–.070. The definitions section, KRS 531.010, defines "obscene" and "sexual conduct" as follows:

(3) "Obscene" means:

(a) To the average person, applying contemporary community standards, the predominant appeal of the matter, taken as a whole, is to

---

**1.** In *Alcorn v. Commonwealth,* Ky.App., 910 S.W.2d 716 (1995), the Court of Appeals held that "an audience may consist of one person." *Id.* at 717.

**2.** In *Mattingly v. Commonwealth,* Ky.App., 878 S.W.2d 797 (1993), the Court of Appeals held that the word "prurient" is not unconstitutionally vague. *Id.* at 799.

**3.** 1974 Ky. Acts, ch. 406, § 265–72, eff. Jan. 1, 1975.

prurient interest in sexual conduct; and

(b) The matter depicts or describes the sexual conduct in a patently offensive way; and

(c) The matter, taken as a whole, lacks serious literary, artistic, political, or scientific value.

(4) "Sexual conduct" means acts of masturbation, homosexuality, lesbianism, bestiality, sexual intercourse, or deviant sexual intercourse; or physical contact with the genitals, flagellation, or excretion for the purpose of sexual stimulation or gratification.

The definition of "obscene" was adopted almost verbatim from the test established by the United States Supreme Court in *Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973).

The 1978 General Assembly expanded KRS Chapter 531 to add sections proscribing "Sexual Exploitation of Minors," including child pornography. KRS 531.300–.370.[4] As initially enacted in 1978,[5] KRS 531.300(3) defined "obscene" the same as it is defined in KRS 531.010(3), *i.e.,* per *Miller v. California, supra,* except that KRS 531.300(3)(b) read:

(b) The matter depicts or describes the sexual conduct *by a minor* in a patently offensive way; ...

(Emphasis added.) As originally enacted,[6] KRS 531.300(4) was the same as it is today except that subsection (4)(b) provided:

(4) "Sexual conduct by a minor" means:

...

(b) Physical contact with, or *obscene* exhibition of the genitals;

...

Thus, the definition of "sexual conduct" in KRS 531.300(4)(a) and (c), and the *"physical contact with ... the genitals"* language in KRS 531.300(4)(b) were lifted verbatim from KRS 531.010(4), *supra.* The *"obscene exhibition of* the genitals" language in KRS 531.300(4)(b) and all of KRS 531.010(4)(d) was new. In *Payne v. Commonwealth,* Ky., 623 S.W.2d 867 (1981), we upheld the statute as written against charges that it was unconstitutionally vague and/or overbroad. *Id.* at 870–72.

In *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), the United States Supreme Court drew a distinction between the test for obscenity defined in *Miller v. California, supra,* which did not involve sexual exploitation of children, and the test for child pornography:

The test for child pornography is separate from the obscenity standard enunciated in *Miller,* but may be compared to it for the purpose of clarity. The *Miller* formulation is adjusted in the following respects: A trier of fact need not find that the material appeals to the prurient interest of the average person; it is not required that sexual conduct portrayed be done so in a patently offensive manner; and the material at issue need not be considered as a whole.

*Ferber,* 458 U.S. at 764, 102 S.Ct. at 3358. The Court held that states are permitted greater leeway in regulating child pornography than adult pornography because "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Id.* at 758, 102 S.Ct. at 3355. "[T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated

---

4. 1978 Ky. Acts, ch. 219, §§ 1–10.

5. *Id.* § 2(3).

6. *Id.* § 2(4).

by the distribution." *Id.* at 759, 102 S.Ct. at 3355.

Thus, the question under the *Miller* test of whether a work, taken as a whole, appeals to the prurient interest of the average person bears no connection to the issue of whether a child has been physically or psychologically harmed in the production of the work.... "It is irrelevant to the child [who has been abused] whether or not the material ... has a literary, artistic, political or social value."

*Id.* at 761, 102 S.Ct. at 3356–57 (internal citation omitted). Although the primary focus of the inquiry was shifted from the effect the pornographic material has on the consumer to the effect that it has on the child depicted, the Court did not remove all restrictions on the regulation of such material.

There are, of course, limits on the category of child pornography which, like obscenity, is unprotected by the First Amendment. As with all legislation in this sensitive area, *the conduct to be prohibited must be adequately defined by applicable state law, as written or authoritatively construed.*

*Id.* at 764, 102 S.Ct. at 3358 (emphasis added). The Court held that the proscription against a "lewd exhibition of the genitals" in the New York statute at issue satisfied the requirement of an "adequate definition." *Id.* at 765, 102 S.Ct. at 3359.

In *Bach v. Commonwealth,* Ky.App., 703 S.W.2d 489 (1985), *superceded by statute as stated in Logston v. Commonwealth,*

Ky.App., 973 S.W.2d 70, 75 (1998), a case alleging a violation of KRS 531.310 (use of a minor in a sexual performance), the Commonwealth asked the Court of Appeals to construe KRS 531.300 in accordance with *Ferber* and not to apply the *Miller* definition of "obscene." *Id.* at 490. Noting that *Ferber* merely permits a state to eliminate the requirement of obscenity from its child pornography laws if it so desires,[7] the Court of Appeals applied the statute as written "until the legislature should choose otherwise." *Id.* at 490–91.

At its next session, the General Assembly amended the definition of "obscene" in KRS 531.300(3) to require only that "the predominate appeal of the matter taken as a whole is to a prurient interest in sexual conduct involving minors"[8] and replaced the requirement of "obscene exhibition of the genitals" in KRS 531.300(4)(b) with "willful or intentional exhibition of the genitals."[9] It is the latter amendment that forms the crux of Appellant's First and Fifth Amendment challenges to the statute.

### C. Vagueness and overbreadth.

In *Osborne v. Ohio,* 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990), the United States Supreme Court held that, even in the context of child pornography, "depictions of nudity, without more, constitute protected expression." *Id.* at 112, 110 S.Ct. at 1698. To satisfy the *Ferber* requirement of an "adequate definition" and the *Osborne* requirement of "more than mere nudity," statutes of other states employ language such as "lewd exhibition of the genitals,"[10] "lascivious exhibition of the

---

**7.** *Ferber,* 458 U.S. at 760, 102 S.Ct. at 3356 ("some States may find that [the *Miller*] approach properly accommodates its [sic] interests").

**8.** 1986 Ky. Acts, ch. 439, § 6(3). While this is a stricter standard than required by *Ferber,* 458 U.S. at 756–64, 102 S.Ct. at 3354–58, it

clearly satisfies the requirement of "adequate definition" with respect to KRS 531.300(4)(d).

**9.** 1986 Ky. Acts., ch. 439, § 6(4)(b).

**10.** *E.g.,* Alaska Stat. § 11.41.455; Ariz.Rev. Stat. § 13–355; Fla. Stat. Ann. § 827.071; Ga.Code Ann. § 16–12–100; 65 Ill. Comp. Stat. 5/11–20.1; La.Rev.Stat. Ann. § 14:81.1;

genitals," [11] or "exhibition of the genitals ... for the purpose of sexual stimulation of the viewer," [12] so as to further define the unprotected conduct. No other jurisdiction, however, employs the language "willful and intentional exhibition of the genitals" for that purpose.

First addressing Appellant's "vagueness" challenge, the language "willful and intentional exhibition" obviously refers to the conduct of the victim, not the defendant. A person violates KRS 531.320(1) by knowingly producing, directing or promoting a performance that includes sexual conduct by a minor. Such conduct requires a conscious objective on the part of the defendant, *i.e.,* intent. *Cf. Mattingly v. Commonwealth, supra* note 2, at 800 (reaching same conclusion with respect to KRS 531.310 proscribing use of a minor in a sexual performance). If "willful and intentional exhibition" referred to the defendant's *mens rea,* the definition statute would be redundant of the statute defining the offense. Thus, "willful and intentional exhibition" refers to the victim's mental state. *See Logston,* 973 S.W.2d at 72 (1998) (applying KRS 531.300(4)(d) and distinguishing *Mattingly, supra* note 2, because the victim in *Mattingly* intended that the defendant photograph her genitals).

Thus, the legislative intent was to *exclude* from KRS 531.300(4)(b) those situations where the defendant filmed or photographed a nude child without the child's knowledge. That conclusion is supported by the Court of Appeals' decision in *Logston, supra,* holding that such activity is included within the definition at KRS 531.300(4)(d). *Id.* at 73–74 (citing *People v. Kongs,* 30 Cal.App.4th 1741, 37 Cal. Rptr.2d 327 (1995), and *People v. Batchelor,* 800 P.2d 599 (Colo.1990)). We note that KRS 531.300(4)(d) requires that the exposure be "obscene" whereas no such requirement applies to KRS 531.300(4)(b). If the child is unaware that his or her genitals are being photographed, there is no offense under KRS Chapter 531 unless the photograph is obscene as defined in KRS 531.300(3); but if the child intentionally poses for a nude "performance," whether voluntarily or whether induced or forced, the element of obscenity is not required. In that instance, it is the abuse of the child, not the obscenity, that is the primary evil to be proscribed.

This interpretation is consistent with *Ferber*'s holding that the state can proscribe child pornography without requiring that the visual reproduction be obscene because the primary evil is not the visual reproduction's effect on the consumer, but its effect on the child. *Ferber,* 458 U.S. at 759–61, 102 S.Ct. at 3355–57; *see also Osborne,* 495 U.S. at 111, 110 S.Ct. at 1697. We conclude that the language of KRS 531.300(4)(b) provides adequate notice to a person of ordinary intelligence of what conduct is prohibited and, thus, is not void for vagueness. *Martin v. Commonwealth,* Ky., 96 S.W.3d 38, 59–62 (2003).

■ However, while KRS 531.300(4)(b) is not unconstitutional "as applied" to Appellant, *see Martin,* 96 S.W.3d at 50 (citing *Bd of Trs. of State Univ. of N.Y. v. Fox,* 492 U.S. 469, 485, 109 S.Ct. 3028, 3037, 106

---

Mass. Gen. Laws ch. 272, § 31(6); Nev.Rev. Stat. 200.700(3); N.Y. Penal Law § 263.00(3); Ohio Rev.Code Ann. § 2907.323; Okla. Stat. tit. 21, § 1024.1; Or.Rev.Stat. § 163.665; Tex. Pen.Code Ann. § 43.25; Vt. Stat. Ann. tit. 13 § 2822; Wis. Stat. Ann. § 948.05.

**11.** *E.g.,* Ark.Code Ann. § 5–17–301; Del.Code Ann. tit. 11, § 1103; Mich. Comp. Laws § 750–145c(1)(f).

**12.** *E.g.,* Cal.Penal Code § 311.4; Colo. Rev. St. § 18–6–403; Mo.Rev.Stat. § 568.060; Wash. Rev.Code § 9.68A.011(3)(e).

L.Ed.2d 388 (1989)), it is facially overbroad "because [its] very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.* (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973), and citing *Dombrowski v. Pfister*, 380 U.S. 479, 487, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965)). Specifically, the lower court in *Ferber* struck down the New York statute because it believed the statute would criminalize protected expression, *e.g.*, pictorials in National Geographic Magazine. *Ferber*, 458 U.S. at 773, 102 S.Ct. at 3363. Justice Brennan worried about the statute's effect on "depictions of children that are in themselves serious contributions to art, literature, or science." *Id.* at 776, 102 S.Ct. at 3365 (Brennan, J., concurring in judgment). The statute at issue in *Osborne v. Ohio, supra,* contained the following exemptions:

(a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance;

(b) The person knows that the parents, guardian, or custodian has consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred.

Ohio Rev.Code Ann. § 2907.323(A)(3) (Supp.1989). *Osborne* strongly suggested that these "proper purposes" provisions removed any claim of overbreadth. *Id.*, 495 U.S. at 112, 110 S.Ct. at 1698.

KRS 531.300(4)(b) does not contain an exemption, as does KRS 531.300(4)(d), for visual reproductions of a private, family nature not intended for distribution outside the family. Nor does it contain an exemption, as do other state statutes, for visual reproductions that are created with the permission of the child's parents and are not obscene, lewd, or designed for the purpose of sexual stimulation of the viewer. It facially criminalizes every instance in which a child is photographed while willfully and intentionally exhibiting his or her genitals. Since mere nudity enjoys First Amendment protection, KRS 531.300(4)(b) as written is facially overbroad and, thus, unconstitutional. However, that does not require us to invalidate the statute.

*D. Limiting construction.*

■ When a ... court is dealing with a ... statute challenged as overbroad, it should, of course, construe the statute to avoid constitutional problems, if the statute is subject to such a limiting construction.... Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute.

*Martin*, 96 S.W.3d at 54 (quoting *Ferber*, 458 U.S. at 769 n. 24, 102 S.Ct. at 3361 n. 24, and *Broadrick v. Oklahoma*, 413 U.S. at 613, 93 S.Ct. at 2916). In *Osborne, supra,* the Ohio Supreme Court had narrowly construed the statute to prohibit "the possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals, and where the person depicted is neither the child nor the ward of the person charged." *Id.*, 495 U.S. at 103, 110 S.Ct. at 1698 (quotation and citation omitted). The U.S. Supreme Court held

that the Ohio Supreme Court's limiting construction saved the statute from a claim of overbreadth. *Id. See also Ferber,* 458 U.S. at 764, 102 S.Ct. at 3358 ("the conduct to be prohibited must be adequately defined by the applicable state law, *as written or authoritatively construed*" (emphasis added)); *cf. Martin,* 96 S.W.3d at 56 ("Insofar as *Commonwealth v. Foley,* 798 S.W.2d 947 (Ky.1990) can be construed to prohibit a limiting construction of a statute challenged as facially overbroad, we overrule it and follow the mainstream principle of judicial construction exemplified by *Osborne v. Ohio . . . .*"). Thus, we construe KRS 531.300(4)(b) as defining "sexual conduct by a minor" as a "willful or intentional exhibition of the genitals" only when such exhibition is lewd. Under that construction, the statute does not suffer from unconstitutional overbreadth. *Osborne,* 495 U.S. at 112–13, 110 S.Ct. at 1698; *Ferber,* 458 U.S. at 765, 102 S.Ct. at 3359 (statute that only proscribed depictions containing "lewd exhibition" of minor's genitals did not violate First Amendment); *Miller,* 413 U.S. at 25, 93 S.Ct. at 2615 (noting "lewd exhibition of the genitals" as an example of what a state statute could validly define for regulation).

### E. "Lewd exhibition."

▮ The issue then becomes whether lewdness is determined only by what is depicted, by the photographer's intent, or both. A few jurisdictions have held that a nude depiction of a child absent any explicit sexual conduct on the child's part is *per se* not lewd. *E.g., State v. Gates,* 182 Ariz. 459, 897 P.2d 1345, 1351–52 (App.1994) (videotapes of minors changing clothes and showering not a lewd exhibition of the genitals); *Lockwood v. State,* 588 So.2d 57, 58 (Fla.Dist.Ct.App.1991) (surreptitiously produced videotape of minor female showering and undressing not "sexual conduct" as defined by statute to include "actual lewd exhibition of the genitals"); *Asa v. Commonwealth,* 17 Va.App. 714, 441 S.E.2d 26, 29 (1994) (photograph of sixteen-year-old female standing nude with her hands at her side not "lewd exhibition of nudity" because, although exposed, victim's breasts and genitalia were not the focus of the photograph); *Frantz v. Commonwealth,* 9 Va.App. 348, 388 S.E.2d 273, 276–77 (1990) (full frontal nude photographs of teenage boys "just standing there" and not engaged in sexual conduct not "lewd exhibition of nudity"). Those cases seem to treat the actual depiction as the only consideration and other factors, such as the sexual arousal or intent of the photographer, as irrelevant. *See Gates,* 897 P.2d at 1349 ("[D]efendant's intent cannot create a 'lewd exhibition' out of otherwise innocent activity by children."); *Frantz,* 388 S.E.2d at 276 ("Evidence that Frantz himself was sexually aroused by the poses is irrelevant.").

We find more persuasive the holdings of other jurisdictions that consider other factors, including the photographer's intent and the intended reaction of the expected viewer, in determining whether a particular performance was a "lewd exhibition." *See United States v. Knox,* 32 F.3d 733, 747 (3d Cir.1994) (lasciviousness [13] is determined from the viewpoint of the intended audience); *United States v. Villard,* 885 F.2d 117, 125 (3d Cir.1989) (look at *intended,* not *actual,* effect on the viewer; however, innocent photograph of nude child does not become lewd because subsequently placed in the hands of a voyeur); *United States v. Wiegand,* 812 F.2d 1239, 1244 (9th Cir.1987) ("[L]asciviousness is not a

---

13. "Lewd" and "lascivious" may be used interchangeably. *United States v. Long,* 831 F.Supp. 582, 587 (W.D.Ky.1993).

characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles ... that is, so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur."); *United States v. Mr. A.,* 756 F.Supp. 326, 329 (E.D.Mich.1991) (because it is child abuse for a photographer to sexually pose a child for purposes of the photographer's sexual gratification, "the apparent motive of the photographer and intended response of the viewer are relevant."); *Alexander v. State,* 906 S.W.2d 107, 110 (Tex.App.1995) ("whether the content of a photograph constitutes a lewd or lascivious exhibition of a child's genitals depends on the intent of the photographer"). We conclude that the best approach is to consider all factors, *i.e.,* the nature of the depiction, the intent and demeanor of the child, and the photographer's intent with respect to the effect of the depiction on its intended audience.

In *United States v. Dost,* 636 F.Supp. 828 (S.D.Cal.1986), *aff'd,* 812 F.2d 1239 (9th Cir.1987), the court enumerated six factors that may be considered in determining whether a particular exhibition is lewd, *viz:*

1) whether the focal point of the visual depiction is the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Id.* at 832. *Dost* did not require that all six factors be present before a depiction could be found to be lewd, but rather that all circumstances surrounding the depiction be examined, taking into account the age of the child. *Id.* Most jurisdictions that have addressed the issue have adopted the *Dost* factors for determining what constitutes a lewd or lascivious exhibition. *See United States v. Wolf,* 890 F.2d 241, 244–45 (10th Cir.1989); *Villard,* 885 F.2d at 122; *United States v. Arvin,* 900 F.2d 1385, 1391 n. 4 (9th Cir.1990) (approving jury instruction based on *Dost* factors); *United States v. Rubio,* 834 F.2d 442, 448 (5th Cir.1987) (same); *United States v. Nolan,* 818 F.2d 1015, 1019 n. 5 (1st Cir.1987), *overruled on other grounds by United States v. Hilton,* 363 F.3d 58, 67 (1st Cir.2004); *Mr. A.,* 756 F.Supp. at 328; *Cummings v. State,* 353 Ark. 618, 110 S.W.3d 272, 279 n. 1 (2003); *People v. Gagnon,* 997 P.2d 1278, 1282 (Colo.Ct.App. 1999); *People v. Bimonte,* 187 Misc.2d 677, 726 N.Y.S.2d 830, 835–36 (N.Y.Crim.Ct. 2001) (noting that *Dost* factors distinguish between innocent photographs and child pornography), *aff'd,* 195 Misc.2d 587, 759 N.Y.S.2d 839 (N.Y.App.Div.2003); *Alexander,* 906 S.W.2d at 110. We regard the *Dost* factors as establishing a reasonable and accurate test for determining whether the Commonwealth has met its burden of proof that a particular "performance" is lewd and adopt them for Kentucky. Whether a depiction meets the *Dost* test is best left to the fact-finder. *Knox,* 32 F.3d at 747; *Arvin,* 900 F.2d at 1390 ("whether the item to be judged is lewd ... is a determination that lay persons can and should make").

In summary, we construe KRS 531.300(4)(b) as requiring that the "willful or intentional exhibition of the genitals" be in a lewd manner in order to constitute

sexual conduct by a minor. Thus, a defendant can be convicted under subparagraph (b) if the exhibition of the genitals by the minor was volitional and in a lewd manner. A defendant can be convicted under subparagraph (d) regardless of whether the exposure is volitional, but only if the exposure was in an obscene manner. The Commonwealth presented enough evidence in this case for a reasonable jury to conclude beyond a reasonable doubt that the photograph in question was a willful and intentional lewd exhibition of A.B.'s genitals. *Commonwealth v. Benham*, Ky., 816 S.W.2d 186, 187 (1991). Momentarily ignoring the Commonwealth's theory that Appellant produced the photograph to satisfy his own allegedly homosexual prurient interest, Appellant's own theory was that he took the photograph to satisfy the prurient interests of two adult females who desired to have sexual intercourse with A.B. Either way, the photograph could be found to be lewd under the *Dost* factors. However, because the jury did not have an opportunity to make that finding, Appellant is entitled to a new trial. We address the other claims of error because they are likely to recur upon retrial.

## II. JURY INSTRUCTIONS.

 The trial court instructed the jury that it could find Appellant guilty of promoting a sexual performance by a minor if it believed from the evidence beyond a reasonable doubt that he "knowingly produced, directed or promoted a performance which included sexual conduct by [A.B.]," and that "[A.B.] was then less than sixteen years of age." The instructions then defined "sexual conduct" in the exact wording of KRS 531.300(4), *i.e.*, not only without requiring that A.B.'s exhibition of his genitals be in a lewd manner, but also requiring the jury to consider whether the conduct consisted of "[a]cts of masturbation, homosexuality, lesbianism, bestiality, sexual intercourse, or deviant sexual intercourse, actual or simulated," KRS 531.300(1)(a), and "[f]lagellation or excretion for the purpose of sexual stimulation or gratification," KRS 531.300(1)(c), none of which were supported by the evidence. The verdict form signed by the jury foreperson merely stated: "We the jury find the Defendant, Jerel Purcell, GUILTY of Promoting a Sexual Performance by a Minor." [14]

 When a jury is presented with alternate theories of guilt and one or more of those theories are unsupported by the evidence, and the verdict does not reflect under which theory guilt was found, the defendant has been denied his right to a

---

14. Prior to returning its verdict, the jury sent a note to the trial judge that read:

> If we find the defendant guilty of # 1 will it be understood by the Court that the only sexual conduct by [A.B.] was the intentional exhibition of his genitals and that a. c. d. and the first portion of B do not apply?
> /s/
> Foreperson

The trial court responded that it could not give the jury additional instructions. This note was an inquiry, not a verdict precluding under double jeopardy principles Appellant's retrial pursuant to the definition of sexual conduct by a minor under KRS 531.300(4)(d). "A 'verdict' is a written declaration by a jury of its decision of the issue submitted in the case." *Cardona v. State,* 957 S.W.2d 674, 676 (Tex.Ct.Crim.App.1997) (jury note that "we are struggling between manslaughter and not guilty" was not a verdict of acquittal on the charged offense of murder); *see also United States v. Bartley,* 855 F.2d 547, 550–51 (8th Cir.1988) (note to judge signed by all twelve jurors asking for additional evidence and stating that they were in complete consensus that insufficient evidence had been presented to prove beyond a reasonable doubt the "guilt or innocence" of the defendant was not a "verdict" that *required setting aside* the jury's later verdict of guilty).

unanimous verdict. *Commonwealth v. Whitmore,* Ky., 92 S.W.3d 76, 81 (2002); *Burnett v. Commonwealth,* Ky., 31 S.W.3d 878, 882–84 (2000) (wherein the trial court gave a definition instruction describing different ways that the offense of trafficking in a controlled substance could be committed, some of which were supported by the evidence and others of which were not).

If the evidence is the same on retrial, the following specimen instructions would accurately frame the issues for the jury:

## Instruction No. 1

### Promoting a Sexual Performance by a Minor

You will find the defendant guilty of promoting a sexual performance by a minor under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county during approximately 1992—1994, and before the finding of the indictment herein, the defendant knowingly produced, directed or promoted a performance which included sexual conduct by [A.B.];

AND

B. That [A.B.] was then less than sixteen years of age.

## Instruction No. 2

### Definitions

1. *"Promote"*—Means to prepare, publish, or print.

2. *"Performance,"* for purposes of this case, means a photograph.

3. *"Sexual conduct by a minor,"* for purposes of this case, means:

(a) [A.B.] willfully or intentionally exhibited his genitals in a lewd manner;

OR

(b) [A.B.]'s unclothed genitals, pubic area or buttocks were exposed in an obscene manner and the exposure was not of a private, family nature not intended for distribution outside [A.B.]'s family.

4. *"Intentionally"*—a person acts intentionally with respect to a result or to conduct when his conscious objective is to cause that result or to engage in that conduct.

5. *"Lewd manner"*—In determining whether [A.B.] exhibited his genitals in a lewd manner under Definition No. 2(a), you may consider the following factors:

(1) whether the focal point of the visual depiction was the child's genitalia or pubic area;

(2) whether the setting of the visual depiction was sexually suggestive, *i.e.,* in a place or pose generally associated with sexual activity;

(3) whether the child was depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

(4) whether the child was fully or partially clothed, or nude;

(5) whether the visual depiction suggested sexual coyness or a willingness to engage in sexual activity;

(6) whether the visual depiction was intended or designed to elicit a sexual response in the viewer.

You may find, but are not required to find, that all six of these factors are present in order to find that the exhibition was lewd. These factors should be considered when the depiction is viewed as a whole with the age of the child taken into account.

6. *"Obscene"*—means the predominant appeal of the matter taken as a whole is to a prurient interest in sexual conduct involving minors.

### III. "OTHER BAD ACTS."

During the Commonwealth's case-in-chief, the prosecutor played for the jury a portion of an audiotape of Appellant's grand jury testimony. During that testimony, on cross-examination by the prosecutor, Appellant was asked whether he had ever told A.B. that a boat had overturned in the reservoir, spilling tackle and other fishing equipment, and that A.B. should dive nude into the reservoir to retrieve the fishing equipment. Appellant admitted telling A.B. about the overturned boat but denied telling him to dive nude into the reservoir. When asked by the prosecutor whether he had told anyone else about the overturned boat, Appellant admitted telling another boy, J.P., about it. A.B. was never asked about the boat at trial and J.P. did not testify at trial.

To rebut the obvious inference created by the prosecutor's question during his grand jury testimony, Appellant denied on direct examination that he had fabricated the story about the boat in order to lure children to the reservoir. He testified that a boat had, in fact, overturned in the reservoir and produced and identified a photograph of a boat recently pulled from the reservoir as portraying the boat that had overturned. He further testified as follows:

Q. Did you ever do anything with this young man, including the taking of this photograph, to satisfy some interest of yours in his sex?

A. No, sir.

On cross-examination, Appellant reiterated that he had told A.B. and J.P. about the overturned boat, but denied encouraging them to dive into the reservoir to retrieve the missing fishing gear. He could not remember whom else he might have told about the boat. He testified that the boat overturned and sank in approximately 1990. The prosecutor then asked:

Q. Isn't it true, Mr. Purcell, that you have a course of conduct, a pattern of behavior, of using the ruse and the story to young boys that there's fishing equipment or poles or tackle at the bottom of a creek or a lake and that you all need to go up there and dive nude for it and fish it out?

A. No, I did not.

Defense counsel's objection, request for an admonition and motion for a mistrial were overruled. The prosecutor continued:

Q. Isn't it true that for many years you've had an interest in those of [A.B.]'s sex?

A. No, I did not.

Again, defense counsel's objection was overruled. The prosecutor continued:

Q. Isn't it true, Mr. Purcell, that you've used a variety of stories for young boys to get them to take their clothes off in your presence?

A. No, it is not.

Again, defense counsel's objection was overruled. The prosecutor then asked Appellant whether he had told similar fishing equipment stories to J.W., R.S., and K.F. to induce them to remove their clothing. Appellant responded that he could not remember any such conversations and specifically denied asking any of them to undress in order to retrieve fishing equipment. He also denied asking K.F. to dive nude in order to untangle a fishing line, asking K.F. if he could get an erection, and encouraging K.F. to masturbate. Finally, Appellant denied asking a fourth child, M.M., to remove his pants and underwear on a fish gigging trip even though M.M.'s pants were wet only below the knees. Defense counsel objected to all of these questions. In rebuttal, the Commonwealth called J.W., M.M., K.F. and R.S. as witnesses to testify to events occurring approximately twenty years before

the charged offense. Appropriate objections were registered to the testimony of all four witnesses.

J.W. was forty-one years of age when this case was tried in April 1999. He testified that sometime in the late 1960's to the early 1970's, when he was eleven to fourteen years old, Appellant had told him that there was a new fishing rod and reel that had been lost in a shallow portion of Fleming Creek. J.W. stated that Appellant told him that he would have to dive nude into the creek to retrieve the fishing equipment, as he did not want the interior of his car to get wet from J.W.'s water-logged clothing. J.W. declined and Appellant drove him home.

R.S., age thirty-nine at the time of trial, testified that when he was thirteen to fourteen years old, he fished with Appellant at a lake near R.S.'s home outside of Flemingsburg. R.S. testified that Appellant once told him to undress and go into the water to see if he could find some fishing equipment that Appellant believed had been lost in the area. R.S. did so, and Appellant also removed his clothing and entered the water. R.S. further testified that Appellant once asked him to place his naked buttocks in the window of the home where he was staying, so that Appellant could see them through the window. Although R.S. saw Appellant approach the window later that night, he stayed in bed and did not go to the window.

K.F., who was forty years old at the time of trial, testified that he went fishing with Appellant at a lake near K.F.'s home several times from 1969 to 1970, when he was ages eleven and twelve. He further testified that Appellant persuaded him on three occasions to undress and dive into the water to look for some expensive fishing equipment that was supposedly in the area. However, Appellant never mentioned anything about a sunken boat.

K.F. also testified to occasions when he had gone into the water wearing shorts to untangle Appellant's fishing line and Appellant had asked him to take off his shorts. On none of those occasions did K.F. actually remove his shorts. Finally, K.F. testified that Appellant had shown him pictures that he kept in his tackle box and asked him if he had ever masturbated. Contrary to the statement made by the prosecutor during cross-examination of Appellant, K.F. did not testify that Appellant encouraged him to masturbate or asked him if he had ever had an erection.

M.M., age thirty-nine at the time of trial, testified that when he was fifteen years old, Appellant had taken him fish gigging at a creek near Sherburne and that afterwards, Appellant instructed him to change his pants and underwear even though his pants were wet only below the knees. While doing as instructed, M.M. noticed Appellant staring at his groin area. M.M. further testified that when he was ten years old, Appellant told him that he knew where he could obtain a new rod and reel, but that he would have to remove his clothes in order to do so. M.M. declined.

The Commonwealth advances four possible theories under which this evidence could have been properly admitted: (A) to rebut factual assertions by Appellant during his testimony; (B) to impeach Appellant's credibility under KRE 608; (C) to rebut evidence of Appellant's good character under KRE 404(a)(1); and (D) to prove motive under KRE 404(b)(1).

### A. To rebut factual assertions.

The only relevant assertion of fact raised by Appellant with respect to inducing young boys to undress in his presence was his testimony that he did not concoct the story about the overturned boat to lure children to the reservoir (as insinuated by the questions asked of him during his

grand jury testimony played for the jury during the Commonwealth's case-in-chief). There was no evidence to rebut Appellant's assertion that the boat overturned and sank in 1990. The Commonwealth's rebuttal evidence about events occurring at Fleming Creek, at a lake near Flemingsburg, at another unnamed lake, and while fish gigging on a creek near Sherburne approximately twenty years before did not rebut evidence about the sunken boat in the reservoir or its spilled fishing gear. Nor did any of the rebuttal testimony relate to incidents involving photographing a nude child under a ruse that an adult woman wanted to have sexual intercourse with him. The only aspects of Appellant's testimony that the rebuttal evidence rebutted were Appellant's denials of the improper accusations made during the prosecutor's cross-examination. In that respect, it was impeachment evidence, which will be discussed *infra*. To the extent that the evidence rebutted Appellant's assertion that he did not take A.B.'s photograph to satisfy an interest "in his sex," it was either character evidence or evidence of motive, which will also be discussed *infra*.

### B. To impeach credibility.

 A prosecutor cannot make improper inquiries about collateral matters on cross-examination and then introduce otherwise inadmissible evidence in rebuttal under the guise of impeachment. *Stansbury v. United States*, 219 F.2d 165, 168–71 (5th Cir.1955). In *Keene v. Commonwealth*, 307 Ky. 308, 210 S.W.2d 926 (1948), *overruled in part on other grounds by Colbert v. Commonwealth*, Ky., 306 S.W.2d 825, 828 (1957), the defendant, on trial for rape and assault, was asked: "Did you on that night or any other time either assault, beat or rape Dorothy Scott or any other person at any time or place?" He answered: "No, I didn't." *Id.*, 210 S.W.2d at

927. The prosecutor seized upon this exchange and asked the defendant if he had not assaulted another woman, Mrs. Houben. Appellant also denied that assault.

> The court overruled the defendant's objection and admonished the jury that this evidence could be considered only for the purpose of affecting the credibility of the defendant as a witness. As a matter of fact, there was no evidence before the jury, but only the implications of the interrogation and the defendant's denials.

*Id.* The prosecutor then called Mrs. Houben as a witness under the guise of impeachment to testify that Appellant had, indeed, assaulted her. Our predecessor court held this to be reversible error.

> It is sought to justify the cross-examination of the defendant and the introduction of the testimony of Mrs. Houben upon the ground that in answering his attorney's broad question, the defendant had testified he had never assaulted or raped the prosecuting witness or any other person. The part of the question referring to the prosecuting witness was, of course, proper. But the other part was improper. It called for an answer on an irrelevant matter. A witness may not be impeached on matters that are irrelevant or collateral to the issue being tried. Incompetent evidence cannot be made the foundation for impeachment of a witness. A witness's answers to questions relating to his previous conduct are regarded as so far collateral that they cannot be contradicted by the party cross-examining unless they go to matter which the law permits to be shown for the purpose of impairing credibility.

*Id.* at 929 (internal citations and quotations omitted).

Although there is no provision in the Kentucky Rules of Evidence prohibiting

impeachment on collateral facts, we have continued to recognize that prohibition as a valid principle of evidence. *Neal v. Commonwealth*, Ky., 95 S.W.3d 843, 849 (2003); *Slaven v. Commonwealth*, Ky., 962 S.W.2d 845, 858 (1997); *Eldred v. Commonwealth*, Ky., 906 S.W.2d 694, 705 (1994), *abrogated on other grounds by Commonwealth v. Barroso*, Ky., 122 S.W.3d 554, 563–64 (2003).[15] Professor Lawson suggests that the issue is more properly decided by applying the KRE 403 balancing test, *i.e.*, weighing the probative value of the impeachment against the prejudicial effect of that evidence and its possible confusion of issues. Lawson, *supra* note 14, § 4.05[3], at 276. It would be a rare occurrence, we think, when the prejudicial effect of evidence of "other bad acts" would not substantially outweigh the impeachment value of such evidence. That is especially true here where Appellant admitted to both taking A.B.'s photograph and to taking it to satisfy a prurient interest.

 Further, the rebuttal evidence consisted of specific instances of misconduct. At the time this case was tried, KRE 608 provided that the credibility of a witness could be attacked or supported only by evidence in the form of opinion or reputation in the community. Thus, specific instances of wrongful conduct could not be used for impeachment purposes. *See also* CR 43.07. As amended in 2003, KRE 608 does not permit proof of specific instances of conduct by extrinsic evidence, but they may, "in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness ...." KRE 608(b) (as amended). The prosecutor's cross-examination questions did not address Appellant's truthfulness, but his morality. Regardless, the Commentary to the 2003 amendment clarifies that "the cross-examiner may not go beyond the answers he gets from such inquiry and later introduce extrinsic evidence to contradict the answers." KRE 608(b), Evidence Rules Review Commission Notes (2003).[16] This is consistent with the preexisting common law rule with respect to the cross-examination of a character witness who has given what amounts to hearsay evidence of the defendant's good reputation for a particular character trait.

When a witness testifies to the good character of a party, he may be asked if he has not heard that the party had done this or that; but proof may not be made by other witnesses in rebuttal that the party had done the things in question.

---

15. Professor Lawson notes that there is also no mention in the Rules of impeachment by bias, interest, or corruption and only limited coverage of impeachment by prior inconsistent statements (noting that KRE 612 deals only with the foundation requirements, implying that such impeachment is permissible). Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 4.05[3], at 275 (4th ed. LexisNexis 2003).

16. The pre–2003 version of the rule must be applied at retrial. KRE 107(b) refers to criminal actions "originally brought on for trial" prior to the effective date of the rules with the proviso that "no evidence shall be admitted *against* a criminal defendant in proof of a crime committed prior to July 1, 1992, unless that evidence would have been admissible under evidence principles in existence prior to the adoption of these rules." (Emphasis added.) Although KRE 107(b) deals only with the effective date of the adoption of the rules, *i.e.*, July 1, 1992, the same principles should apply to the adoption of amendments to the rules. As pointed out in the Commentary to KRE 107(b), "cases tried ... under pre-existing evidence rules must be retried ... under the same rules if retrial ... becomes necessary." KRE 107(b), Drafters' Commentary (1989).

*Etherton v. Commonwealth*, 246 Ky. 553, 55 S.W.2d 343, 347 (1932).

### C. To rebut character evidence.

■ The Commonwealth may introduce evidence of a pertinent trait of character or general moral character of the accused only in rebuttal of evidence of good character offered by the accused. KRE 404(a)(1). The Commonwealth asserts that Appellant's statement that he did not photograph A.B. in the nude to satisfy his own interest "in [A.B.'s] sex" was evidence of good moral character subject to rebuttal. Even if that were true, character evidence is admissible only in the form of reputation or opinion, not specific instances of conduct. KRE 405(a). "By providing only for the use of reputation or opinion evidence in this situation, the rule plainly implies a prohibition on evidence of particular acts of conduct." Lawson, *supra* note 15, § 2.20[4], at 116.

■ The trial court admitted the rebuttal evidence in the stated belief that Appellant had "opened the door" by denying that he told A.B. to dive nude into the reservoir to look for the fishing equipment spilled from the overturned boat, and by claiming that he did not photograph A.B. in the nude to satisfy his own interest "in [A.B.'s] sex." "Opening the door," sometimes referred to as "curative admissibility," occurs when one party introduces inadmissible evidence that "opens the door" for the other party to introduce equally inadmissible evidence in rebuttal. *Norris v. Commonwealth*, Ky., 89 S.W.3d 411, 414–15 (2002). Of course, Appellant's evidence was not inadmissible. Further, it was the Commonwealth that injected the homosexual voyeurism issue into the case by playing the grand jury tape in which Appellant denied using the sunken boat/fishing gear ruse to lure A.B. into diving nude into the reservoir. The prosecutor obviously knew that A.B. would not testify to that fact; for why play the grand jury tape of Appellant's denial if the incident could be proved by A.B.'s direct testimony? As previously noted, the prosecutor never asked A.B. about this alleged incident at trial. It was the introduction of this irrelevant "bad character" evidence during the Commonwealth's case-in-chief that "opened the door" for Appellant's attempt to cure the resulting prejudice by rebuttal evidence that the sunken boat story was true and that he was not interested "in [A.B.'s] sex." This brief rebuttal did not reopen the door for the Commonwealth to prove that Appellant was a homosexual voyeur by inadmissible specific instances of conduct. "The open door doctrine is supposed to prevent prejudice (not to introduce or exacerbate it) . . . ." *Lawson, supra* note 15, § 1.10[5], at 46 (quoting 1 Christopher C. Mueller & Laird C. Kirkpatrick, *Federal Evidence*, § 12 (2d ed.1994)). Certainly, Appellant's mere statement that he did not take the nude photograph of A.B. because of his interest "in his sex" "did not open the door to the storm of evidence that followed." *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534, 548 (1988).

### D. To rebut evidence of motive.

■ Finally, the Commonwealth asserts that the evidence was admissible to rebut Appellant's denial that his motive in photographing A.B. in the nude was to satisfy his interest "in [A.B.'s] sex." Assuming that the rebuttal evidence was offered to prove that Appellant's motive in taking the photograph was to satisfy his own homosexual voyeurism, evidence of other bad acts was admissible under KRE 404(b)(1) only if it satisfied the three-part test of *Bell v. Commonwealth*, Ky., 875 S.W.2d 882 (1994), *viz*: (1) Is the evidence relevant? (2) Does it have probative value? (3) Is its probative value substantially

outweighed by its prejudicial effect? *Id.* at 889–91.

### 1. Relevancy.

A factor bearing on the relevancy of evidence to prove motive depends on whether the issue of motive is in actual dispute. Lawson, *supra* note 15, § 2.25[3][b], at 127. Appellant admitted taking the photograph and admitted that he took it to satisfy a prurient interest— but not his own prurient interest. Whose prurient interest was to be satisfied was largely irrelevant to whether the photograph was lewd or obscene. Thus, the relevancy of the evidence was weak, at best. In fact, it more strongly tended to prove only a propensity, a purpose which we condemned in *Pendleton v. Commonwealth*, Ky., 685 S.W.2d 549, 552 (1985) ("Contrary to the language in *Russell v. Com.*, 482 S.W.2d 584 (Ky.1972), . . . no evidence is admissible to show 'lustful inclination.'").

### 2. Probativeness.

This aspect of the *Bell* test relates to whether there is sufficient evidence that the "other crime, wrong, or act" actually occurred. *Bell*, 875 S.W.2d at 890; Lawson, *supra* note 15, § 2.25[3][c], at 130–31. The testimonies of J.W., R.S., K.F. and M.M. satisfied this aspect of the test.

### 3. Prejudice.

■ Even if evidence is relevant and probative, it should be excluded if its probative value is substantially outweighed by the danger of undue prejudice and confusion of issues. KRE 403.

> If protection against propensity evidence is to be meaningful, courts must limit the use of the "motive" exception to situations where motive is pertinent to the issues of the case and where the other crimes evidence shows a motive to commit the charged offense and not just some offense

> . . . [B]ecause proving motive by other acts may inject serious risks of prejudice . . . considerable caution is needed. In the end, other acts that bring such risk should not be admitted to prove motive where the connection with such elements in the case . . . is too attenuated, where such elements are abundantly established by other evidence . . ., or where they are not seriously contested.

> Need is greatest and relevance is clearest when the defense is denial of the criminal act . . . .

Lawson, *supra* note 15, § 2.25[5], at 146 (quoting Mueller & Kirkpatrick, *supra*, § 110). As noted, evidence of Appellant's "other bad acts" of homosexual voyeurism was not crucial to the Commonwealth's case because Appellant admitted that he had a prurient motive in taking the photograph of A.B. Further, the acts testified to by J.W., M.M., K.F., and R.S. occurred approximately twenty years prior to the charged offense, thus further reducing their probative weight. *Commonwealth v. English*, Ky., 993 S.W.2d 941, 944 (1999). On the other hand, the prejudicial effect of this evidence was devastating. It identified Appellant as a long-practicing serial homosexual predator. The only purpose of this evidence was to encourage the jury to convict Appellant because of what he was, rather than what he did on the occasion of the charged offense.

■ A trial court's decision with respect to the KRE 403 balancing test is reviewed for abuse of discretion. *Johnson v. Commonwealth*, Ky., 105 S.W.3d 430, 438 (2003); *English*, 993 S.W.2d at 945. Here, however, the trial judge did not purport to weigh the probative value of the evidence against its prejudicial effect but only ruled that the evidence was admissible because Appellant had "opened the

door." We are not required to defer to discretion that was never exercised. *Cf. Woosley v. United States,* 478 F.2d 139, 144–45 (8th Cir.1973) (deference not required where trial court did not exercise discretion in imposing sentence). We conclude that the probative value of the rebuttal evidence was substantially outweighed by its prejudicial effect and should have been excluded.

Accordingly, we reverse Appellant's conviction and the sentence imposed therefor and remand this case to the Fleming Circuit Court for a new trial in accordance with this opinion.

LAMBERT, C.J.; JOHNSTONE, KELLER, and STUMBO, JJ., concur.

WINTERSHEIMER, J., concurs in part and dissents in part by separate opinion, with GRAVES, J., joining that opinion.

WINTERSHEIMER, Justice, concurring in part and dissenting in part.

I concur with so much of the majority opinion that upholds the validity of the statute in question. However, I disagree with the result achieved by the majority insofar as it reverses the conviction and remands for a new trial. I also disagree with the analysis and result found in the portions of the opinion labeled jury instructions and "other bad acts."

The evidence presented at trial against the defendant was sufficient to withstand his motion for a directed verdict of acquittal. The trial judge properly denied the motion, and the defendant's conviction does not violate his first amendment rights. The jury instructions did not violate the due process rights of the defendant nor did it criminalize "simple nudity." KRS 531.320 is constitutional. This is not a case of simple nudity.

In this case, the defendant testified in his own defense and admitted taking the photographs, but he maintained that he did so, not for his own sexual gratification, but instead, to entice two neighborhood girls into having sex with him. When the defendant testified that he did not experience sexual gratification when he took the nude photograph, he opened the door for rebuttal testimony by the prosecution which was to the effect that his motive was sexual gratification. Here, the prior bad acts involved were not too remote in time to be inadmissible. The evidence was properly admitted pursuant to KRE 404(b)(1) because it was intended to show the motive or intent in committing the crime.

Under all the circumstances, any possible error was harmless because the defendant testified that he took the picture of the boy for the sexual gratification of others. I would affirm the conviction in all respects.

GRAVES, J., joins this opinion.